UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| AMY AVERY SAMPSON, ET AL. | CIVIL ACTION NO. 10-1834 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| GATX, CORP., ET AL. | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is Honeywell International Inc.'s ("Honeywell") Motion for Summary Judgment. (Record Document 41). After consideration of this motion and Amy Sampson's response in opposition (Record Document 47), the defendant's motion for summary judgment is **GRANTED**.

**BACKGROUND**

Shannon Lloyd Sampson ("Sampson") was an employee at GATX. (Record Document 41-1 at 1). On March 12, 2010, Sampson was assigned to enter a railcar identified as GATX 25031 for the purpose of taking pictures of the interior. See id. GATX 25031 had most recently been leased to and used by Honeywell. See id. Upon entering GATX 25031 Sampson was overcome by the lack of sufficient oxygen to sustain respiratory functions and passed away. (Record Document 47-1 at 2-3).

Prior to returning GATX 25031 to GATX, Honeywell removed all the remaining refrigerant product. To do this, a vacuum was applied to the railcar, recovering any reusable product "and to remove the heel and any product vapors." (Record Document 41-1 at 2). Honeywell then claims that in order for a railcar to be considered "clean," nitrogen pressure must be applied to obtain a test sample of the interior contents. "The sample must

show organics to be below 1,000 parts per million ("PPM") for the railcar to be approved as 'clean.' " If the test reads above 1,000 PPM, then the steps must be performed again. See id. When this process was performed on GATX 25031, it showed organic material as below 500 PPM and therefore a Cleaning Certificate was executed. Plaintiff does not disagree with any of this factually, but disagrees that this process renders the railcar "clean," as set out in the lease agreement. (Record Document 47-1 at 3).

GATX had a Confined Space Program for employee safety in place at the time of this incident. (Record Document 41-1 at 2). This Confined Space Program was mandated by the Occupational Health and Safety Administration ("OSHA"). (Record Document 41-2 at 5). Both OSHA and GATX prohibit GATX's employees from entering the tank of a railcar without first sampling the oxygen levels to determine if entry is safe. (Record Document 41-2 at 6). GATX 25031 is a permit-required confined space. (Record Document 41-1 at 2). Sampson did not receive a Confined Space Entry Permit to enter GATX 25031. (Record Document 41-1 at 3).[1]  When Sampson entered the railcar, he knew the car had not been ventilated, he did not test the interior atmosphere before entry, and he was not wearing a safety harness or tether.[2]

---

[1] Plaintiff states she disagrees to this statement but, in doing so, only asserts that Confined Space Entry Permits "frequently...were not used without repercussion" and, therefore, were not required by GATX. (Record Document 47-1 at 4). This denial is insufficient to prove a Confined Space Entry Permit was not required as the policy is clear and there is testimony that these were required by GATX. Further, plaintiff makes this argument without a single citation to the record. "[A] judge is not a knight-errant, roaming at will in pursuit of his own ideal of beauty or of goodness." U.S. v. Mudekunye, 646 F.3d 281, 298 (5th Cir. 2011). Or, put another way, "Judges are not like pigs, hunting for truffles." See id.

[2] Plaintiff states she disagrees with this statement but, in doing so, only asserts that Sampson did not know he was in violation of GATX's Confined Space Program.

Plaintiff, Amy Avery Sampson, is the surviving spouse of Sampson and brings this wrongful death action individually and on behalf of their two children.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3] Quality Infusion Care, Inc. v. Health Care Serv. Corp., 628 F.3d 725, 728 (5th Cir. 2010). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." See Id. "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir.2004). If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir.2004). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir.2005).

---

(Record Document 47-1 at 5). Therefore, these facts are undisputed.

[3] The Court notes that the newly amended Rule 56 requires that there be "no genuine *dispute* as to any material fact," but this change does not alter the Court's analysis. F.R.C.P. 56(a) and advisory committee's note (emphasis added).

**ANALYSIS**

In a diversity case such as this one, we apply state substantive law. <u>Erie R.R. Co. v. Tompkins</u>, 304 U.S. 64, 78 (1938). In Louisiana, negligence claims are rooted in Louisiana Civil Code article 2315, which reads, "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." The Louisiana Supreme Court as adopted the duty/risk analysis in determining whether or not a defendant is liable under article 2315.

> In order for liability to attach under a duty-risk analysis, a plaintiff must prove five separate elements: (1) the defendant had a duty to conform his or her conduct to a specific standard of care (the duty element); (2) the defendant failed to conform his or her conduct to the appropriate standard of care (the breach of duty element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of protection element); and (5) actual damages (the damage element).

<u>Pinsonneault v. Merchants & Farmers Bank & Trust Co.</u>, 816 So.2d 270, 275-276 (La. 2002). "The threshold question in any duty-risk analysis is whether the defendant owed a duty to the plaintiff. Whether a duty is owed is a question of law." <u>See id</u>. at 276.

Plaintiff's claim against Honeywell is grounded in the tort of negligence. Specifically, plaintiff appears to be bringing either a failure to warn claim against Honeywell or a claim that Honeywell breached a duty created through a lease agreement. (Record Document 47 at 7). Honeywell has brought this motion for summary judgment alleging that it did not owe Sampson a duty to warn that the railcar contained nitrogen, which is harmful to human life, and that Honeywell's lease with GATX did not create a tort duty. Honeywell does not

dispute the "basic facts" of plaintiff's petition. (Record Document 41-2 at 6).

All parties to this action recognize the dangerous nature of Sampson's work. GATX's Manager of Health, Safety, and Railcar Cleaning, William Pfanenstiel ("Pfanenstiel"), stated that confined space entry is one of his highest safety priorities. (Record Document 41-2 at 9). GATX's Confined Space Program specifically prohibits "[e]ntry into a confined space...until initial testing of the atmosphere has been performed from outside the space." (Record Document 41-2 at 10). There are no exceptions. Testing the atmosphere of the railcar requires the inspector of the railcar to use certain instruments to determine if the atmosphere is within "allowable limits." (Record Document 41-2 at 11). Then the atmosphere is to be monitored while the inspection is taking place with an alarm to alert the inspector if the levels rise to an unsafe level. See id. This procedure is to be taken even if the railcar "was reported as clean." See id.

Plaintiff claims that "it is generally accepted that safety protocols will not always be [followed]." (Record Document 47 at 6). Further, Honeywell focuses much of its argument on the fact that Sampson failed to follow the protocol for a confined space entry. However, neither of these arguments are probative as to whether Honeywell owed Sampson a duty or whether Sampson understood the risks involved in cleaning GATX 25031. At issue is whether Sampson, as a GATX employee, was aware of the risks involved in cleaning railcars owned by GATX.

In this instance, there does not appear to be a Louisiana court decision directly applicable to these facts. However, the Court can gain insight into the issue by looking into other areas of Louisiana law. In the realm of product liability, Louisiana Courts have held that there is no duty to warn on the part of the manufacturer when there is danger and "the

manner of avoiding that danger is common knowledge and known to the injured party." Benjamin v. First Horizon Ins. Co., 978 So.2d 1121, 1127 (La. App. 3 Cir. 3/5/08). See also Colbert v. Sonic Restaurants, Inc., 741 F.Supp.2d 764, 770 (W.D. La. 2010). In Damond v. Avondale Industries, Inc., a plaintiff who contracted silicosis sued the supplier of sand used in sandblasting. 718 So.2d 551 (La. App. 4 Cir. 08/19/98). The plaintiff claimed that the supplier failed to warn him of the dangers of sandblasting. The Louisiana Second Circuit held that "OSHA regulations, found at 29 C.F.R. § 1910, et seq., provide detailed instructions on the equipment to be used in sandblasting. [Plaintiff] was presumed to have knowledge of these regulations. [Plaintiff] was a "sophisticated user" who was presumed to know of the dangers in the use of sand in sandblasting because of its familiarity with the product and the OSHA regulations governing its use." See id. at 552. Further, in the realm of premises liability, "where a risk is obvious, there is no duty to warn or protect against it." Moory v. Allstate Ins. Co., 906 So.2d 474,478 (La. App. 1 Cir. 2/11/05).

Honeywell did not have a duty to warn because Sampson was well aware of the risks of a entering the railcar's confined space. Just as in Damond, Sampson qualifies as a "sophisticated user" when it came to cleaning railcars because he was trained in GATX's Confined Space Program.[4] GATX's Confined Space Program applied to every confined space and the program did not delineate between a railcar that was marked as hazardous

---

[4]Honeywell provided specific evidence that Sampson "had been trained in GATX's Confined Space Program, and was well aware of the requirements for entry into GATX 25031." (Record Document 41-1 at 3). Plaintiff admits Sampson received training, but, without the support of any evidence on the record, claims that the training was inadequate. Conculsory allegations such as this are not competent summary judgment evidence. See Busick v. Neal, 380 Fed. Appx. 392, 397 (5th Cir. 2010) ("[M]ere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient ... to defeat a motion for summary judgment.").

and one that was not. The Confined Space Program specifically stated that "THE ATMOSPHERE OF ALL cars must be monitored prior to entry." (Record Document 41-2 at 12). It is clear that a confined space can be hazardous, not because of the presence of a hazardous substance, but because of the absence of oxygen. (Record Document 41-2 at 10). It stands to reason that every entry in a confined space carries with it the risk that the railcar will simply not have sufficient oxygen. The Confined Space Program expressly stated that "the following conditions shall be met before an inspector can enter a rail car. 1. Interior inspections shall only be performed after the car has been either through a cleaning system or ventilated if the car was reported and tested as clean...2. Test the atmosphere in the car using the appropriate instruments...3. Place the monitor on the platform and the external alarm on the hinge of the manway." This protocol was required even if the railcar was "reported as clean." (Record Document 41-2 at 11). These provisions of the Confined Space Program show that Sampson was put on notice that *every* confined space is dangerous and life threatening and Sampson was well aware of these risks. Sampson's co-workers testified that they were all aware of the risks and dangers of entering a confined space. (Record Document 41-2 at 13-15). Therefore, Honeywell did not owe Sampson a duty to warn of the hazardous condition because Sampson was well aware that any confined space carried with it extreme hazard and he especially knew of the risk if he ignored the Confined Space Program's policies.

Further, it appears that even if a duty to warn did exist, it could not have been the cause-in-fact or the proximate cause of Sampson's injuries. It is important to remember that GATX is Sampson's employer. Sampson's job on March 12, 2010 was to determine if Honeywell had properly cleaned and labeled GATX 25031. James Avery ("Avery"),

Sampson's brother-in-law and co-worker, stated that Sampson's "inspection of the car was to make sure it was clean." (Record Document 41-2 at 25).The question was asked to Avery, "Despite the fact that it came with a cleaning certificate saying that the car had been cleaned by the customer, you still have to inspect it?" Avery responded, "Yes, that is done before any work gets done on it." See id. Avery was on top of the tank car when Sampson went it in. See id. This testimony was corroborated by Trant Jackson ("Jackson"), who was also on top of the tank car. Jackson testified that he never even saw the cleaning certificate from Honeywell or looked at the work order. Further, he confirmed that regardless of whether it was reported clean, their job was to determine if the car actually was clean. See id. Jackson testified that it would not have mattered if Honeywell claimed the railcar to be clean or not. See id. Sampson's job required him to confirm the contents of railcars for his employer, GATX. This appears to show that Sampson's job requires him to disregard the documentation companies such as Honeywell attach to their railcars. Sampson's job existed because GATX has found there to be a possibility that companies like Honeywell will, in fact, mislabel the contents of railcars. It is illogical to state that but/for Honeywell's failure to list that the railcar contained nitrogen, the accident would not have taken place. Sampson's job was to determine what the car contained, regardless of Honeywell's assertions, before working inside the railcar. Therefore, there is no genuine dispute of fact that Honeywell was not the cause-in-fact or proximate cause of Sampson's injuries.[5]

---

[5]Plaintiff states that there is a duty to warn and Honeywell's lack of a warning caused Sampson's death because at least one other railcar that Honeywell returned to GATX had, in its cleaning certificate, the statement that "the car does not have a nitrogen atmosphere." The implication here is that Honeywell should have put a warning in the cleaning certificate regarding the presence of nitrogen in GATX 25031. However, as shown above, the crew that worked on GATX 25031 did not even look at the

Plaintiff attempts to offer an alternate creation of a duty by stating that Honeywell contractually assumed a tort duty to return the railcar "safe for human entry" as required in the lease agreement between Honeywell and GATX. However, Pfanenstiel, GATX's Manager of Health, Safety, and Railcar Cleaning claims that Honeywell met all of the requirements of the lease agreement by notifying GATX of the railcar's last contents, providing a material safety data sheet ("MSDS"), and providing a cleaning certificate. (Record Document 41-2 at 26-27). It is hard to imagine that this contract created a tort duty that would have extended to this plaintiff in this situation. From the depositions of the GATX employees, as well as reading the lease contract itself, it appears this contract created a contractual duty for Honeywell to return the cars clean so as to allocate the cost of cleaning the railcars to Honeywell and not GATX. This is shown by another provision of the lease that sets out monetary service charges for failure to return a railcar as set out in the lease. (Record Document 50 at 3). The lease also contained a provision that allowed for a railcar cleaning contract whereby GATX would clean railcars for Honeywell. Evidence was presented to the Court that such a contract did exist between Honeywell and GATX. See id. Further, Honeywell has provided specific evidence that regardless of how a railcar is cleaned, it is possible that a confined space will never be "safe for human entry" simply because there will always be the risk of oxygen deprivation. (Record Document 41-2 at 9-10). It does not appear from a reading of the lease and the evidence presented that the provision about cleaning railcars was, in any way, intended to create a duty under tort law.

---

cleaning certificate. Plaintiff has not even attempted to rebut this evidence. Further, the absence of such a statement in GATX 25031's cleaning certificate should have, if anything, put Sampson on notice nitrogen *may* be present.

**CONCLUSION**

Summary judgment is appropriate for Honeywell because, by law, Honeywell did not owe a duty to Sampson and, therefore, plaintiff cannot meet its *prima facie* case.

Accordingly,

**IT IS ORDERED** that the Motion for Summary Judgment (Record Document 41) filed by defendant Honeywell International, Inc. be and is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that all of Plaintiff Amy Sampson's claims against Honeywell International, Inc. be and are hereby **DISMISSED**.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 29th day of March, 2012.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE